UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X   Case No.:
LORI OSTENFELD,

                   Plaintiff,   **COMPLAINT**

      -against-

NEWSELA, INC., and MATTHEW GROSS,   Plaintiff Demands a
individually,   Trial by Jury

                  Defendants.
-----------------------------------------------------------------X

Plaintiff, LORI OSTENFELD, by and through her attorneys, PHILLIPS & ASSOCIATES, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"), the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), and the remedy violations of the New York State Human Rights Law, New York Executive Law §§ 296, *et seq.* ("NYSHRL") and the New York City Human Rights Law, New York City Administrative Code §§ 8-107, *et seq.* ("NYCHRL") based upon the supplemental jurisdiction of this Court pursuant to *Gibbs*, 38 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated against by Defendants on the basis on the basis of her disability, together with failure to provide a reasonable accommodation, failure to engage in the interactive process, interference with protected rights under the FMLA, retaliation, aiding and abetting discrimination, breach of contract and unlawful termination.

1

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 29 U.S.C. § 2601, *et seq.*; 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

4. Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of New York. 28 U.S.C. § 1391(b).

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6. On or about April 18, 2019, Plaintiff received a Notice of Right to Sue from the EEOC.

7. This Action is being commenced within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

8. There is also diversity jurisdiction in that the parties are diverse and the damages in this matter exceed $75,000.

## PARTIES

9. Plaintiff is a female resident of the State of New Jersey, County of Union.

10. At all times material, Plaintiff suffered from a disability, of which Defendants were aware.

11. At all times material, Defendant NEWSELA, INC. (hereinafter referred to as "NEWSELA"), was and is a foreign business corporation duly incorporated under the laws of the State of Delaware.

12. At all times material, Defendant NEWSELA was and is a foreign business corporation duly authorized to conduct business under the laws of the State of New York.

13. At all times material, Defendant NEWSELA was and is a foreign business corporation which did and does conduct business under the laws of the State of New York.

14. At all times material, Defendant NEWSELA was and is an education technology company, with its principal place of business located at 519 8th Avenue, 21st Floor, New York, New York 10018.

15. At all times material, Defendant MATTHEW GROSS (hereinafter referred to as "GROSS"), was and is a resident of the State of New York.

16. At all times material, Defendant GROSS was and is working as the "Chief Executive Officer" for Defendant NEWSELA and had authority to hire, terminate, and affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision-making regarding same.

17. At all times material, Plaintiff was an employee of Defendant NEWSELA.

18. At all times material, Plaintiff was a qualified employee under the FMLA as she was employed with Defendant NEWSELA for twelve months and worked at least 1,250 hours during the twelve months prior to the start of FMLA leave.

19. At all times material, Defendant NEWSELA was and is a qualified employer under the FMLA and employed at least 50 employees within a 75-mile radius.

## MATERIAL FACTS

20. On or about September 16, 2016, Plaintiff began working for Defendant NEWSELA as a "Human Resources ("HR") Consultant."

21. Plaintiff's job duties as HR Consultant included talent acquisition, training and ensuring compliance with applicable laws and internal policies.

22. Plaintiff was well-qualified for this position, having more than a decade of experience in positions

as head of Human Resources departments in the financial industry. Plaintiff is certified as an executive coach by the International Coach Federation. Plaintiff earned her Bachelor's degree and has a Masters of Business Administration degree from the Wharton School of Business.

23. In or around mid to late October 2016, Plaintiff began functioning in the role of Defendant NEWSELA's "Chief People Officer."

24. On or about January 17, 2017, Defendant NEWSELA formally promoted Plaintiff to the role of "Chief People Officer."

25. In such role, Plaintiff reported directly to Defendant NEWSELA's Chief Executive Officer, Defendant GROSS.

26. The terms of Plaintiff's employment were memorialized in a written agreement. The agreement included, among other provisions, payment of severance benefits equaling six months' salary continuation in the event of involuntary termination.

27. The agreement also provided that Defendant NEWSELA had the obligation to provide Plaintiff with a proposed release agreement within five business days of involuntary termination of her employment.

28. On or about March 17, 2017, Plaintiff sustained severe injuries to her neck, back, hips, knee, and shoulder when she slipped and fell on black ice outside her home.

29. Plaintiff's physical condition as a result of her fall constitutes a disability under the ADA, as her injuries impeded her ability to engage in major life activities, including walking, standing and driving.

30. Plaintiff promptly advised Defendant GROSS of her injuries and their impact on her ability to walk, stand and drive.

31. Despite her injuries, Plaintiff performed her job to the best of her abilities. This included, but

was not limited to, working 65 hours per week, including weekends, handling employee issues, developing and conducting company trainings, presenting at weekly Executive Leadership Team meetings and Board meetings, and organizing and planning the company's Long Term Strategic Planning retreat.

32. On or about May 8, 2017, Plaintiff underwent surgery to repair the injuries to her knee.

33. Following her surgery, Plaintiff's doctor recommended that Plaintiff work from home for a duration of three (3) weeks, from May 9, 2017 to May 30, 2017.  Accordingly, Plaintiff requested a reasonable accommodation from Defendants to allow her to work from home. Defendants granted Plaintiff's accommodation request.  On or about May 9, 2017, Plaintiff began to work from home.

34. On or about May 23, 2017, Defendant GROSS contacted Plaintiff via email and demanded that she attend a meeting at the office *in person* on May 24, 2017.

35. Plaintiff reluctantly agreed to attend the meeting, against her doctor's orders, because she believed that failing to do so would negatively impact her employment with Defendant NEWSELA.

36. However, other, non-disabled employees were permitted to attend the meeting remotely via video conference.

37. When Plaintiff returned to working at the office, on or about June 1, 2017, Defendant GROSS began to criticize Plaintiff's job performance.  In particular, Defendant GROSS faulted Plaintiff for not being physically present at the Long Term Strategic Planning retreat referenced in Paragraph 31, aobve..

38. On or about June 14, 2017, Plaintiff provided Defendant NEWSELA with a doctor's note, which elaborated on the recurrent pain Plaintiff was experiencing in her knee.  Specifically, Plaintiff's

doctor recommended that Plaintiff attend physical therapy three days per and work from home on the days she attended physical therapy. Accordingly, Plaintiff requested a reasonable accommodation from Defendants to allow her to work from home three days per week. Defendants granted Plaintiff's accommodation request.

39. On or about June 30, 2017, Plaintiff submitted a doctor's note to Defendants, which articulated additional job restrictions in light of Plaintiff's ongoing knee, back and spinal problems. In this note, Plaintiff's doctor restricted Plaintiff from traveling beyond her commute to and from work.

40. Defendants granted the accommodation request.

41. On or about July 10, 2017, Defendant NEWSELA held a company retreat in Mohonk, NY. Defendants permitted Plaintiff to attend remotely by teleconference.

42. While the retreat was ongoing, and after it concluded, Defendant GROSS indicated to Plaintiff that he was unhappy with her for attending the retreat remotely, by, among other things, unfairly criticizing Plaintiff's HR team.

43. On or about July 16, 2017, Plaintiff submitted a doctor's note to Defendants, which articulated her doctor's recommendation that six (6) weeks of short-term medical leave was necessary to allow Plaintiff's injuries to heal.

44. That same day, Plaintiff applied for short-term medical leave for the duration of six (6) weeks.

45. This constituted a request for a reasonable accommodation as well as a request for FMLA job-protected leave.

46. On or about July 17, 2017, Defendant GROSS called Plaintiff to inquire about her leave application. During their conversation, Defendant GROSS asked Plaintiff, "**Are *you sure* you want to follow you doctor's recommendation? Your request is not one I'd expect of an executive team member**."

47. Plaintiff was humiliated and distressed by Defendant GROSS' question because he had knowledge of her disability, her doctor's recommendation and Plaintiff's dedication to the job and the company.

48. On or about July 21, 2017, having received no communication regarding her accommodation request, Plaintiff called Defendant NEWSELA's HR Associate, Rosemary Vargas ("Vargas"), to inquire about the status of her leave application. In response, Vargas conveyed to Plaintiff that Defendant GROSS was refusing to process Plaintiff's leave application because he did not believe Plaintiff was disabled and wanted to obtain additional medical documentation from Plaintiff.

49. Defendant GROSS ultimately approved Plaintiff's request for medical leave for the duration of six (6) weeks.

50. On or about August 7, 2017, Plaintiff's doctor diagnosed her with depression arising from work-related stress.

51. On or about August 25, 2017, Plaintiff submitted a doctor's note to Defendants, which articulated the doctor's recommendation that Plaintiff take an additional four (4) weeks of medical leave for pain management. That same day, Plaintiff applied for an extension of her short-term medical leave for the duration of four (4) weeks. This constituted a request for a reasonable accommodation as well as FMLA job-protected leave.

52. On or about August 27, 2017, Defendant GROSS called Plaintiff, accused her of job abandonment and *insisted* upon her return to work despite his knowledge of Plaintiff's disability and her request for accommodations. Plaintiff replied that returning to work was against her doctor's recommendations. Defendant GROSS further stated, "**your team members are disappointed in you and don't respect you**."

53. On or about August 29, 2017, Defendant GROSS sent Plaintiff a text message stating, "**your requests for medical leave are unprofessional**."

54. However, Defendants ultimately extended Plaintiff's medical leave for an additional two (2) weeks, not the four weeks recommended by Plaintiff's doctor.

55. Defendants failed to properly accommodate Plaintiff's disability and to engage in the interactive process in a proper manner by only granting Plaintiff two weeks medical leave.

56. On or about September 11, 2017, Defendant GROSS called Plaintiff and stated, "**[Defendant NEWSELA] deals with you, not your doctor, its up to you to decide whether to follow your doctor's advice**."

57. Again, Plaintiff was distressed at Defendant GROSS' comments.

58. On or about September 12, 2017, Plaintiff sent an email to Brooks Byers ("Byers"), a member of Defendant NEWSELA's Board of Directors, complaining about Defendant GROSS' ongoing harassment and discrimination based on her disability and requests for medical leave as an accommodation for her disability.

59. Plaintiff received no response to this email. Defendant NEWSELA did nothing to escalate Plaintiff's complaint, remedy the harassment, or prevent further harassment.

60. In or about the beginning of October 2017, Plaintiff submitted a doctor's note to Defendant, which articulated the doctor's recommendation that Plaintiff take twelve (12) weeks of medical leave for treatment of Plaintiff's spinal and knee injuries. Simultaneously therewith, Plaintiff formally applied for job-protected leave under the Family Medical Leave Act ("FMLA").

61. Defendants denied Plaintiff's request for job-protected FMLA leave and terminated Plaintiff's employment effective October 30, 2017 under the pretext of "job abandonment."

62. Defendants terminated Plaintiff's employment because she was disabled and/or perceived to be

disabled by Defendants.

63. Defendants terminated Plaintiff's employment in order to interfere with her rights under the FMLA.

64. Defendants failed to accommodate Plaintiff's disability and/or perceived disability.

65. Defendants failed to engage in the interactive process.

66. Defendants terminated Plaintiff's employment in retaliation for her complaints of disability discrimination and/or for her requests for a reasonable accommodation.

67. Defendants terminated Plaintiff so that they would not have to accommodate Plaintiff in the future and/or provide her with FMLA leave.

68. As a result of Defendants discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

69. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, the future loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, loss of enjoyment of life, and other non-pecuniary losses.

70. As Defendants conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against the Defendants, jointly and severally.

**AS A FIRST CAUSE OF ACTION
UNDER FEDERAL LAW (FMLA)
<u>RETALIATION AND INTERFERENCE</u>**

71. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

72. Section 2612(d)(2)(B) of the Family Medical Leave Act, states in pertinent part: "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period

> . . . Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

73. Section 2615(a) of the Family Medical Leave Act, states in pertinent part:

    > Interference with rights. (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter. (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

74. Defendants violated all other applicable sections of the FMLA.

75. Defendants interfered with and/or retaliated against Plaintiff for requesting FMLA leave by terminating her employment.

## AS A SECOND CAUSE OF ACTION
## UNDER THE AMERICANS WITH DISABILITIES ACT
## <u>DISCRIMINATION</u>

76. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

77. Plaintiff claims the Defendant violated Title I and V of the Americans with Disabilities Act of 1990 (Publ. L. 101-336) as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101. Sec. 12112 specifically states:

    (a) General Rule- No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

78. Defendant violated the above and Plaintiff suffered substantial damages as a result.

## AS A THIRD CAUSE OF ACTION
## UNDER THE AMERICANS WITH DISABILITIES ACT
## RETALIATION AND INTERFERENCE

79. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

80. Sec. 12203 of the ADA. Prohibition against retaliation and coercion provides as follows:

    (a) Retaliation: No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

    (b) Interference, coercion, or intimidation: It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

81. Defendant violated Plaintiff's above rights as set forth herein.

## AS A FOURTH CAUSE OF ACTION
## UNDER STATE LAW
## DISCRIMINATION

82. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

83. Executive Law § 296 provides that that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

84. Defendant violated the section cited herein by discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff on the

basis of her disability, together with failure to provide a reasonable accommodation, failure to engage in the interactive process, interference with protected rights under the FMLA, retaliation, and unlawful termination.

### AS A FIFTH CAUSE OF ACTION
### UNDER STATE LAW
### RETALIATION

85. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

86. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

87. Defendant engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS A SIXTH CAUSE OF ACTION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### DISCRIMINATION

88. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

89. The Administrative Code of City of NY § 8-107 [1] provides that it shall be unlawful "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge

from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

90. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff on the basis of her disability, together with failure to provide a reasonable accommodation, failure to engage in the interactive process, interference with protected rights under the FMLA, retaliation, and unlawful termination.

### AS A SEVENTH CAUSE OF ACTION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### RETALIATION

91. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

92. The New York City Administrative Code Title 8, §8-107 (7) provides that it shall be unlawful discriminatory practice: "For an employer... to discharge ... or otherwise discriminate against any person because such person **has opposed any practices** forbidden under this chapter..."

93. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(e) by discriminating against the Plaintiff because of Plaintiff' opposition to the unlawful employment practices of Plaintiff's employer.

### AS AN EIGHTH CAUSE OF ACTION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### AIDING & ABETTING

55. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

56. The New York City Administrative Code Title 8-107(6) provides that it shall be an unlawful

discriminatory practice, "For any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this chapter, or attempt to do so."

57. Defendant GROSS engaged in an unlawful discriminatory practice by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct.

## AS A NINTH CAUSE OF ACTION
## UNDER NEW YORK COMMON LAW
## BREACH OF CONTRACT

94. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

95. Under the terms of the parties' agreement, Defendant NEWSELA was to provide Plaintiff with a release of claims within five business days of its involuntary termination of Plaintiff's employment.

96. Defendant NEWSELA has failed to do so.

97. Defendant NEWSELA has also failed to provide Plaintiff with the severance pay and pay continuation specified in the parties' agreement.

98. Defendant NEWSELA has breached the parties' agreement.

99. Due to Defendant NEWSELA's action, Plaintiff has incurred substantial damages.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the FMLA, ADA, NYSHRL, and the NYCHRL, and that Defendants discriminated against Plaintiff on the basis of on the basis of her disability, together with failure to provide a reasonable accommodation, failure to engage in the interactive process, interference with

protected rights under the FMLA, retaliation, aiding and abetting discrimination and unlawful termination.

B. Declaring that Defendant NEWSELA breached the parties' agreement with respect to severance pay and salary continuation;

C. Awarding damages to the Plaintiff, retroactive to the date of discharge, for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful termination of her employment and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

D. Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain and suffering and injury to her reputation;

E. Awarding Plaintiff liquidated damages under the FMLA;

F. Awarding Plaintiff punitive damages;

G. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of this action;

H. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy the Defendant's unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendant in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: Princeton, New Jersey
       July 17, 2019

By: _____

**PHILLIPS & ASSOCIATES, PLLC**
*Attorneys for Plaintiff*
Steven Siegler, Esq.
100 Overlook Center, 2nd Floor
Princeton, New Jersey 08540
(609) 436-9087